IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2021

## FRED AUSTON WORTMAN, III v. STATE OF TENNESSEE, TENNESSEE BOARD OF PAROLE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 20-217-IV     Russell T. Perkins, Chancellor**

_____

### No. M2021-00068-COA-R3-CV

_____

This appeal concerns a denial of parole. Fred Austin Wortman, III ("Wortman") pled guilty to two counts of attempted first degree murder and one count of solicitation of first degree murder, all stemming from Wortman's repeated attempts to kill his wife. Wortman was sentenced to thirty years in prison. After a parole hearing, the Tennessee Board of Parole ("the Board") denied Wortman parole due to the seriousness of his offenses and the substantial risk that he would not conform to the conditions of release. Wortman subsequently filed a petition for writ of certiorari in the Chancery Court for Davidson County ("the Trial Court") challenging the Board's decision. The Trial Court affirmed the Board's decision. Wortman appeals to this Court raising a number of issues. We affirm the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Fred Auston Wortman, III, Wartburg, Tennessee, pro se appellant.

Herbert H. Slatery, III, Attorney General and Reporter, and Pamela S. Lorch, Senior Assistant Attorney General, for the appellees, Tennessee Board of Parole, Gary Faulcon, Gay Gregson, Roberta Kustoff, Richard Montgomery, Tim Gobble, Zane Duncan, Barrett Rich, Rob Clark, Jim Purviance, Gayle Barbee, Richard O'Bryan, Mark Edward Davidson, Paul Hagerman, F/N/U Stewart.

## OPINION

## Background

Wortman, an attorney and father of three, pled guilty to two counts of attempted first degree murder and one count of solicitation of first degree murder. On September 19, 2019, Wortman had his initial parole hearing. On the day of his parole hearing, Wortman had served approximately four years and three months of his thirty-year sentence.

Hearing Officer Faulcon ("Faulcon") asked Wortman about each of his offenses, beginning with one out of Shelby County. Faulcon set out the facts. In February 2015, the Collierville Police Department received a call from Attorney Terry Cox, who reported finding information on a computer at his law firm about how to hire a hitman. A picture of Wortman's wife was also found on the computer saved under the file name "AW." The Collierville officers requested FBI assistance. Detectives called Wortman to explain to him that they knew about his research on hiring a hitman. Wortman had also been researching poisons on the computer in question. Wortman was put on notice not to have any contact with his wife.

After Wortman's wife mentioned that she became ill after brushing her teeth with Crest toothpaste, her tube of toothpaste was sent for lab testing. It turned out that the toothpaste contained poison of a kind that Wortman had previously researched on the computer. Wortman's young daughter had also used the toothpaste. Asked by Faulcon if he wished to correct or add anything about these facts, Wortman stated: "Your Honor, the summary you have just read is -- is -- is the record. And that -- that's what is before this body, yes, sir." Asked directly by Faulcon if he put the poison in his wife's toothpaste, Wortman stated: "Yes, sir."

Faulcon moved on to the second offense. On June 5, 2015, Wortman met with a man he believed to be a hitman. The "hitman" was, in fact, an undercover agent with the Tennessee Bureau of Investigation. Wortman showed the agent a picture of his wife; gave him a down payment in cash; and discussed how the purported hitman would receive the remaining funds after the job was completed. Wortman recounted the incident as follows: "I had been in contact with -- who turned out to be an undercover agent with the TBI. We had scheduled a meeting for that day, there in Fayette County, to discuss … a hit on my ex-wife." Wortman continued: "During the -- during that particular meeting or during that meeting, the facts were that we discussed the -- his -- whether he would be able to kill my wife -- or wife at the time." Wortman was arrested after this meeting.

-2-

Faulcon then moved to the third offense. While incarcerated in July 2015, Wortman offered another inmate money to kill Wortman's wife. Wortman stated: "At that time, he -- apparently, his -- he had seen the news or was aware of the news of my presence in that jail, and he approached me and said he could -- he could make problems disappear. And I basically fell in with what he was saying."

Wortman then listed the classes he had taken while incarcerated. Wortman stated that, if he were released, he would live with his parents in northwest Tennessee. Wortman stated that he had certain job opportunities available to him. Faulcon noted that the Board received numerous letters for and against parole for Wortman. Likewise, at the hearing, a number of people spoke for and against parole for Wortman. Among the speakers in opposition were District Attorney Mark Davidson ("Davidson") of Fayette County and Paul Hagerman ("Hagerman") from the District Attorney's office in Memphis. Wortman made his own statement, as well.

At the conclusion of the parole hearing, Faulcon recommended denial of parole for Wortman. Faulcon explained his reasoning as follows:

> Before I make my recommendation, let me remind you, Mr. Wortman, that I am just one of four concurring votes that you need. As I stated earlier, your file will be sent to the other Board members. They will review it also. So my vote alone is just that: my vote. You need four concurring votes to -- to grant or deny your parole.
> I would also like to thank everyone that has come out today, whether you were in support or opposition of Mr. Wortman's release. I thank you for coming out. I thank the speakers for everything that they have said today.
> Mr. Wortman, you have done very well with your programming and your discipline. You have stayed out of trouble. You have sought classes to -- to help you out, to move on with your life.
> However, I cannot overlook the impact of these crimes and the impact that it had on the victim, the community, and everyone else involved.
> I also cannot overlook the seriousness of this crime. You tried to kill your wife at least three times. And on one of those occasions, it almost -- well, it put your -- your -- your small child in harm's way, and it could have harmed her. That's very disturbing.
> It appears that you had a complete disregard for any collateral damage while trying to kill your wife.
> My recommendation today is to decline your parole based on the seriousness of the offense; and, that is, the release from this -- the release from custody at this time would depreciate the seriousness of the crime.

I feel that you're a high risk, Mr. Wortman, specifically based on your previous actions alone. Again, not once, not twice, but three times you tried to kill Ms. -- Mrs. Wortman; and, thankfully, it didn't happen.

So, again, my recommendation is to decline you based on the seriousness of the offense, being a high risk. And I will review -- or my recommendation is to review you again in the year of 2026.

Now, not that you agree with my recommendation, Mr. Wortman, but do you have any question about the process as we go forward?

INMATE WORTMAN: No, sir.

HEARING OFFICER FAULCON: Okay. Again, decline the balance seriousness of the -- decline the balance for the seriousness of the defense [sic]. High risk. Review September 2026.

Again, thank you all for coming….

In the end, four Board members voted unanimously to deny Wortman parole. On the Board of Parole Action Sheet regarding Wortman's hearing, each Board member's explanation for their vote was set out as follows:

SO - The release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote disrespect of the law: T.C.A. 40-35-503(b)(2)

HR - There is substantial risk that the offender will not conform to the conditions of release: T.C.A. 40-35-503(b)(1)

The Board also sent Wortman a letter informing him of its decision. Wortman filed an administrative appeal. In January 2020, Wortman's administrative appeal was denied.

In February 2020, Wortman filed his verified petition for writ of certiorari and complaint in the Trial Court asserting various causes of action and seeking review of the Board's decision. The Board filed a motion to dismiss the complaint portion of Wortman's filing. Rather than dismiss Wortman's complaint, the Trial Court severed it from the petition; assigned it a docket number; and allowed it to proceed as a separate case. For his part, Wortman filed a motion seeking remand to the Board for discovery. In April 2020, the Trial Court entered an order denying Wortman's motion, stating in pertinent part:

In a parole release hearing, the Board gathers and reviews documents and information it deems relevant to parole consideration and hears testimony from the inmate, his witnesses, the victim, and other interested community members, such as the district attorney and judge who presided over the criminal trial, as well as the sheriff, the victim's family, and other interested persons. *See* Tenn. Comp. R. & Regs. 1100-01-01-.06. There is no provision in the Board's Rules for discovery by the parties.

In this matter, Petitioner did not seek discovery prior to the parole release proceedings. Further, Petitioner did not submit discovery requests to the Board until he filed an administrative appeal of the Board's parole decision. There is no provision in the Board's Rules for a party to engage in discovery during the administrative appeal. Further, Local Rule § 25 contains rules specific to judicial review of administrative agency decisions and does not provide for discovery. Instead, Local Rule § 25 provides that the parties shall submit legal briefs to the Court upon the administrative agency's submission of the administrative record below.

In May 2020, the Trial Court entered an order granting Wortman's petition for writ of certiorari "to the extent it seeks to have the administrative record transmitted to this Court." The Board was ordered to "make, certify and transmit to the Court the entire, true and correct record of the aforementioned proceedings had before you and on file in your office and make return of this Writ showing how you have obeyed the same within thirty (30) days of issuance, pursuant to Tenn. Code Ann. § 27-9-109."

In July 2020, Wortman filed a motion seeking an order from the Trial Court requiring the Board to file the "entire administrative record"; in the alternative, to remand to the Board for discovery; for leave to present "supplemental evidence that was knowingly withheld by the defendants in the filing of the sanitized, self-serving, partial record"; and for sanctions. In August 2020, the Trial Court denied Wortman's motion, stating in pertinent part:

In his Motion, Petitioner claims that Respondents did not file the complete administrative record and cites to Exhibit A, which are materials the Board produced to Petitioner in response to his public records request. However, a comparison of Exhibit A and the non-confidential portion of the record shows that the Board filed the complete non-confidential portion of the record. The materials in the public record response contain all of the non-confidential portion of the record as well as materials which are not part of the administrative record, namely, the Tennessee Parole Release Decision Making Guidelines, the Rules of the Tennessee Board of Parole, the Average Time Served Chart, and the Board of Parole Unit Manual.

[T]he Court hereby finds that Respondents have filed the complete non-confidential portion of the record. To this end, Petitioner's Motion is denied. With respect to the confidential portion of the record, the Court will address this matter by separate Order once the matter comes before the Court for determination on the papers on August 14, 2020. As such, the issue of the confidential portion of the record is reserved until August 14, 2020.

In his motion for leave to present supplemental evidence, which was pled in the alterative, Petitioner appears to seek an Order remanding this case to the Board to allow Petitioner to pursue discovery in an effort to obtain supplemental evidence. However, the Court has already determined this issue in its Order entered April 22, 2020, wherein it denied Petitioner's request for remand and discovery.

Next, Petitioner moves the Court to impose sanctions upon Respondents for "knowingly and willfully failing to file the entire, whole and complete administrative record[.]" Motion, p. 23. However, as set forth above, the Court determines that Respondents have filed the complete non-confidential portion of the record. Further, Respondents did not file the confidential portion of the record pursuant to its authority under Tenn. Code Ann. § 40-28-119 to "make rules, as it deems proper, as to the privacy of the record ... and [its] use by others than the board and its staff" and Tenn. Comp. R. & Regs. 1100-01-01-.15(1)(a) that "information . . . in the Board's file . . . considered confidential by the Board . . . will not be released[.]" Tenn. Code Ann. § 40-28-119; Tenn. Comp. R. & Regs. 1100-01-01-.15(1)(a). As there was no willful failure to comply with the law and as legal authority supports Respondents' actions, Petitioner's motion for sanctions is denied.

In July 2020, the Board filed a motion asserting that a portion of the administrative record was confidential pursuant to Tenn. Code Ann. §§ 40-28-119, 40-28-504(b) and 40-28-505(h)(1) and Tenn. Comp. R. & Regs. 1100-01-01-.15. The Board sought to file this confidential portion of the record under seal. In August 2020, the Trial Court entered an order granting the Board's motion, stating in pertinent part:

-6-

Here, the confidential portion of the record contains the offense report, which contains statements by the victim and others, as well as information from other state agencies; the portion of the Board action sheet that contains opposition statements, information and materials from other state agencies; notice letters to victims; and victim impact statements. This information is confidential pursuant to Tenn. Comp. R. & Reg. 1100-01-01-.15. The victim impact statement is also confidential pursuant to Tenn. Code Ann. § 40-28-504(b), and the notice letters to victims are confidential pursuant to Tenn. Code Ann. § 40-28-505(h)(1).

In September 2020, Wortman filed a motion for instructions and for an order imposing a negative spoliation inference against the Board. In October 2020, the Trial Court entered an order denying Wortman's motion, stating in pertinent part:

In his motion, Mr. Wortman claims he has a right to review the confidential portion of the administrative record that was filed under seal. He also claims that the Board has not submitted the following documents in the administrative record:
1. Exhibit A: The Board of Parole Unit Manual, Average Time Served Chart, and the Tennessee Parole Release Decision Making Guidelines;
2. Exhibit B: September 11, 2019 letter from District Attorney General Mark E. Davidson to Richard Montgomery, Chairman Tennessee Board of Parole;
3. Exhibit C: December 6, 2019, December 20, 2019 and February 3, 2020 letters from Rob Clark, Board of Parole General Counsel to Fred Wortman #558354;
4. Alford Plea Agreement between Petitioner and State of Tennessee; and
5. Petitioner's Risk Assessment score.
Mr. Wortman claims that, because the Board has not filed these documents, he is entitled to an Order imposing a "spoliation of evidence" negative inference.
The Court has already addressed Mr. Wortman's desire to review the confidential portion of the administrative record in its Order entered August 14, 2020….

***

Next, Mr. Wortman claims that the Board did not file the complete administrative record and cites to Exhibit A, which are materials the Board produced to Mr. Wortman in response to his public records request. As previously stated in the Court's August 10, 2020 Order,

> a comparison of Exhibit A and the non-confidential portion of the record shows that the Board filed the complete non-confidential portion of the record. The materials in the public record response contain all of the nonconfidential portion of the record as well as materials which are not part of the administrative record, namely, the Tennessee Parole Release Decision Making Guidelines, the Rules of the Tennessee Board of Parole, the Average Time Served Chart, and the Board of Parole Unit Manual.

Order (Aug. 10, 2020), pp. 1-2.

The Alford Plea Agreement between Mr. Wortman and the State is not part of the administrative record. No one, including Mr. Wortman, entered a copy of the alleged Alford Plea Agreement into the administrative record below. Therefore, said Agreement is not part of the administrative record. The other materials that Mr. Wortman claims are not in the administrative record are, in fact, in the record. The September 11, 2019 letter from District Attorney General Davidson to Richard Montgomery, Chairman of the Board, is in the confidential portion of the record at Page 169. The Risk Assessment Score is in the confidential portion of the record, beginning at Page 23. The December 6, 2019 and December 20, 2019 letters from Attorney Rob Clark to Mr. Wortman are in the non-confidential portion of the record at Pages 266 and 278. The February 3, 2020 letter from Attorney Clark to Mr. Wortman is not in the record because the administrative record ended with the Board's denial of Mr. Wortman's administrative appeal on January 13, 2020. The administrative appeal denial letter concluded the proceedings and concluded the record. *See* Administrative Record, p. 233.

Mr. Wortman claims that, on the basis of the negative spoliation doctrine, the Court must accept as true his allegation that District Attorney General Davidson and Board member Faulcon engaged in an *ex parte* meeting in which District Attorney General Davidson bribed Mr. Faulcon to deny Mr. Wortman parole release. However, none of the materials Mr. Wortman claims as a basis for the application of the doctrine are relevant to or support this claim. Mr. Wortman also claims that he is entitled to the inference that this Court must take as true the allegations that he has alleged. The Court is under no duty to take Mr. Wortman's allegations as true, as Mr. Wortman has failed to present valid grounds for the imposition of sanctions and the materials at issue are not relevant to the claims he alleges.

In December 2020, the Trial Court entered its order affirming the Board's decision to deny Wortman parole. The Trial Court found and held, in relevant part:

After a thorough review of the record, the Court determines that the Board did not act illegally, fraudulently or in excess of its authority by denying Mr. Wortman parole based upon the seriousness of the offenses and a substantial risk that Mr. Wortman would not abide by the conditions of release. Mr. Wortman pled guilty to his crimes at trial and admitted his guilt at the parole hearing. Mr. Wortman attempted to murder his wife, then attempted to hire a hitman to murder her, and, while imprisoned, again attempted to hire a hitman. Mr. Wortman's unrelenting, focused efforts to kill his wife, despite the authorities' discovery and efforts to stop him, not only support the denial of parole due to seriousness of the offenses but also due to a substantial risk of nonconformance to the conditions of release.

The majority of Mr. Wortman's brief is based upon his allegation that there was a closed-door, private, secret, *ex parte* meeting between Board member Faulcon and Assistant District Attorney Davidson immediately prior to the parole hearing. This allegation is unsupported by any evidence in the record. The record demonstrates that Board member Faulcon participated in the parole hearing from Murfreesboro, Tennessee.[1] *See* A.R. at 3. District Attorney General Davidson participated by teleconference from Nashville, Tennessee. *See id*. at 24, 26, 40. Mr. Wortman and his supporters participated by teleconference from the Morgan County Correctional Complex in Wartburg, Tennessee. *See id*. at 3, 24, 63. People opposed to parole participated by teleconference from Jackson, Tennessee. *See id*. at 24, 26, 65. As Board member Faulcon and District Attorney General Davidson were not in the same city, it would be geographically and physically impossible for the two to join in an *ex parte*, closed-door meeting in Nashville, Tennessee immediately prior to the parole hearing as suggested by Mr. Wortman.

The Court has previously considered and rejected Mr. Wortman's claims that Respondent failed to include materials in the record. *See* Order entered August 10, 2020. The only new material Mr. Wortman claims is not in the record - District Attorney General Amy Weirich's October 18, 2017 letter to the Board - is in fact in the record at Page 230. The Court also previously considered and rejected Petitioner's claim that he was entitled to file discovery and serve subpoenas on the Board subsequent to the parole hearing. *See* Orders entered April 22, 2020 and August 10, 2020. The Court ordered the confidential portion of the record, filed under seal, to be viewed by the Court and its staff only. *See* Order entered August 14, 2020. The Court also previously denied Mr. Wortman's motion for sanctions, finding that Respondent properly complied with the law regarding the confidential and non-confidential portions of the record. *See* Order entered August 10, 2020.

---

[1] "Hearing Officer Faulcon was present at the Murfreesboro Field Office in Murfreesboro, Tennessee." A.R. at 3.

Mr. Wortman claims that the Board failed to file with the Court the Alford Plea Agreement entered between Mr. Wortman and the State in his criminal proceedings. A review of the administrative record shows that no one, including Mr. Wortman, submitted the Alford Plea Agreement to the Board for its consideration. As the Alford Plea Agreement was not submitted to the Board, it is not part of the record below. Despite this, Mr. Wortman's claims under the alleged Alford Plea Agreement provide no basis for relief. Mr. Wortman alleges that the Alford Plea Agreement provides that he would be released on parole after serving 30% of his sentence. Mr. Wortman was sentenced to 30 years. Thirty percent of a 30-year sentence is nine years. As of the date of Mr. Wortman's initial parole hearing on September 19, 2019, Mr. Wortman had only served approximately 4 years of his sentence.[2] *See* A.R. at 7, 62.

For the foregoing reasons, the Court determines that the Board did not act illegally, fraudulently or in excess of its authority by denying Mr. Wortman parole based upon the seriousness of the offenses and a substantial risk that Mr. Wortman would not abide by the conditions of release. Accordingly, the Court hereby AFFIRMS the decision of the Tennessee Board of Probation and Parole, denying parole to Mr. Wortman based on the seriousness of the offenses and substantial risk of nonconformance to the conditions of release. Costs of this cause, including any facsimile filing fees, are taxed to Petitioner, Fred Auston Wortman, III, for which execution may issue if necessary.

(Footnotes in original).

Wortman filed a motion to alter or amend the Trial Court's judgment. The Board filed a response in opposition. In February 2021, the Trial Court denied Wortman's motion to alter or amend. Wortman timely appealed to this Court.

---

[2] "Your - - your sentence expires on or about August the 16th, 2043. You have served approximately four years and three months." A.R. at 7.

## Discussion

Wortman raises seven issues with multiple sub-arguments on appeal. We restate and consolidate Wortman's issues into the following dispositive issues: 1) whether the Trial Court erred by declining to rule that the administrative record was incomplete or that Wortman was entitled to conduct discovery; 2) whether the Trial Court erred by declining to find that the Board's decision was illegal because of alleged *ex parte* communications between Davidson, Faulcon, and other members of the Board; 3) whether the Trial Court erred in declining to find that Wortman was entitled to release upon completion of 30% of his sentence pursuant to an Alford plea agreement Wortman entered into with the State; 4) whether the Trial Court erred in declining to find that the Board acted illegally, arbitrarily, or fraudulently; and, 5) whether the Trial Court erred by declining to rule that the Board improperly converted a determinate sentence into an indeterminate sentence.

Our Supreme Court has discussed the limited standard of review applicable to decisions by the Board to grant or deny parole as follows:

> Prisoners do not have an absolute right to be released on parole. *Hopkins v. Tenn. Bd. of Paroles & Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001) (citing *Graham v. State*, 202 Tenn. 423, 304 S.W.2d 622, 623-24 (1957)). Parole is a privilege, not a right. Tenn. Code Ann. §§ 40-28-117(a)(1), 40-35-503(b); Tenn. Bd. Parole R. 1100-01-01-.02(2); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

> ***

> Judicial review of a parole decision made by the Board is narrow; it is limited to consideration of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The reviewing court does not inquire into the intrinsic correctness of the Board's decision, reweigh the evidence, or substitute its judgment for that of the Board. *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008); *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001). The court considers only the manner in which the decision was made. *Stewart*, 368 S.W.3d at 463 (citing *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)).

*Brennan v. Bd. of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017). "In writ of certiorari proceedings, a court does not have the authority to reweigh the evidence presented to the Board or substitute its own judgment for that of the Board." *Greenwood v. Tennessee Bd. of Parole*, 547 S.W.3d 207, 216-17 (Tenn. Ct. App. 2017) (citing *Young v. City of LaFollette*, 353 S.W.3d 121, 124 (Tenn. Ct. App. 2011)). "[I]f no material evidence exists to support the Board's decision, it is arbitrary or illegal." *Id*.

We first address whether the Trial Court erred by declining to rule that the administrative record was incomplete or that Wortman was entitled to conduct discovery. In his brief, Wortman asserts several examples of documents he contends the Board wrongly withheld or failed to file as part of the administrative record, to wit: (1) "internal documents that the Board Members reference and rely on when making a parole decision…[a]s an example, attached hereto are exemplar computer screens used by the Board"; (2) "certain written correspondence submitted by Davidson to the Board"; (3) "the Board apparently filed certain documents under seal and did not provide a copy of the sealed documents to Appellant"; (4) "the Board did not include various written correspondence from [Board Counsel] Clark to Appellant"; (5) "the Board failed to produce the Alford Plea Agreement entered into between the State and the Appellant and which was memorialized in court orders"; (6) "the Board failed to produce, apparently for self-serving purposes, the risk assessment score that Stewart sought to change by applying pressure and illegal influence to Counselor Seiver. Appellant submits that the risk assessment shows that Appellant has the lowest possible risk score that the assessment provides"; and (7) "the Board filed only one document authored by District Attorney Amy Weirich … [h]owever, Weirich filed at least one other document." Wortman further argues that "the Trial Court erred in failing to impose sanctions against the Appellees for their failure to file the complete administrative record…."

Wortman cites two cases, *Livingston v. State of Tenn. Bd. of Paroles*, No. M1999-01138-COA-R3-CV, 2001 WL 747643 (Tenn. Ct. App. July 5, 2001), *no appl. perm. appeal filed*, and *Horton v. Tenn. Dep't of Corr.*, No. M1999-02798-COA-R3-CV, 2002 WL 31126656 (Tenn. Ct. App. Sept. 26, 2002), *no appl. perm. appeal filed*,[3] both for the proposition that on common law writ of certiorari review, the entire administrative record rather than just a portion of it must be filed. However, there are important distinctions between *Livingston* and *Horton* and the present case. In *Livingston*, this Court stated:

---

[3] Wortman also cites a third case on this issue, *Davis v. Maples*, No. M2002-02564-COA-R3-CV, 2003 WL 22002660 (Tenn. Ct. App. Aug. 25, 2003), *no appl. perm. appeal filed*. However, *Davis v. Maples* was designated a "memorandum opinion" pursuant to Rule 10 of this Court and may not be cited or relied upon in any unrelated case.

[T]he writ was never issued, and the record of the Board's hearing was not filed. Mr. Livingston's petition was met with a motion for summary judgment on behalf of the Board. Attached to the motion was an affidavit of the custodian of the records of the Board, certifying the authenticity of various documents, also attached to the affidavit, from the Board's files regarding Mr. Livingston. The affidavit does not state that those documents constitute the entire record of Mr. Livingston's parole revocation proceeding. Thus, the Board apparently filed portions of the record of its proceedings but did not file a certified copy of its entire record of the proceeding being challenged….

*Livingston*, 2001 WL 747643, at *5.

In *Horton*, this Court, after quoting favorably from *Livingston*, stated:

[T]he trial court directed the Department to "submit any necessary documents or affidavits for the court to consider" on only one of Mr. Horton's allegations. The trial court should have issued the writ of certiorari directing the Department to file the official record in both of the challenged proceedings. The end result of the procedure followed by the trial court is that we have before us only selected portions of the disciplinary board's record along with new materials prepared in response to the trial court's directions. This is no way to run a railroad. Nevertheless, to decide whether the trial court correctly dismissed Mr. Horton's petition, we will work with the record we have.

*Horton*, 2002 WL 31126656, at *2.

In contrast to these preceding cases, the Trial Court, per its May 2020 order, issued the writ and instructed the Board to "make, certify and transmit to the Court the entire, true and correct record of the aforementioned proceedings had before you and on file in your office and make return of this Writ showing how you have obeyed the same within thirty (30) days of issuance, pursuant to Tenn. Code Ann. § 27-9-109."[4] In its August 2020 order, the Trial Court found "that Respondents have filed the <u>complete</u> non-confidential portion of the record." (Emphasis added). Wortman argues, nevertheless, that the record is incomplete.

---

[4] Tenn. Code Ann. § 27-9-109 provides:

(a) Immediately upon the grant of a writ, the board or commission shall cause to be made, certified and forwarded to such court a complete transcript of the proceedings in the cause, containing also all the proof submitted before the board or commission.

-14-

Our review reflects that certain items Wortman states were wrongly excluded from the record are, in fact, found in the confidential portion of the record, namely: the September 11, 2019 letter from Davidson to Chairman Richard Montgomery; Wortman's risk assessment score; and an additional letter by District Attorney Amy Weirich. The Trial Court had the authority to grant the Board's motion to file this confidential portion of the record under seal. *See Hickman v. Tenn. Bd. of Prob. and Parole*, No. M2001-02346-COA-R3-CV, 2003 WL 724474, at *7 (Tenn. Ct. App. Mar. 4, 2003), *no appl. perm. appeal filed* ("Obviously, the Board is not required to provide to Mr. Hickman any records that are made confidential by a rule promulgated pursuant to a specific grant of statutory authority."); Tenn. Code Ann. § 40-28-119(b) (2018) ("The board may make rules, as it deems proper, as to the privacy of the record and of the records of its employment bureau, and their use by others than the board and its staff."); Tenn. Comp. R. & Regs. 1100-01-01-.15 (1) (setting forth what constitutes confidential information).

In addition, as found by the Trial Court, the Tennessee Parole Release Decision Making Guidelines, the Rules of the Tennessee Board of Parole, the Average Time Served Chart, and the Board of Parole Unit Manual are not part of the administrative record. Wortman's alleged Alford plea agreement was never introduced. Finally, two of the letters sent to Wortman by Clark, counsel for the Board, are found in the administrative record. A third letter, dated February 3, 2020, was not included because it was sent after the Board's denial of Wortman's administrative appeal. Therefore, each document that Wortman asserts was improperly excluded from the administrative record can be found in the administrative record or else is not properly part of the administrative record. With respect to Wortman's request for discovery, Wortman points to no provision in the Board's rules or elsewhere in the law showing that the Board was required to respond to any subpoenas, interrogatories, or document production requests Wortman made after his parole hearing. In sum, the administrative record is complete, and there is no basis for Wortman's request for sanctions against the Board. This issue is without merit.

---

(b) The clerk of such court shall promptly, by registered return-receipt mail, notify each party named as defendant in the petition of the filing of such transcript.

Tenn. Code Ann. § 27-9-109 (2017).

We next address whether the Trial Court erred by declining to find that the Board's decision was illegal because of alleged *ex parte* communications between Davidson, Faulcon, and other members of the Board. However, Wortman points to no evidence in the record for these alleged *ex parte* communications; he relies only upon his "information and belief" as stated in his verified petition. As to Wortman's allegation of a "closed-door" meeting between Faulcon and Davidson, we note that the record reflects Faulcon was in Murfreesboro, Tennessee while Davidson was in Nashville, Tennessee and participated in the hearing via teleconference, making any such private, in person closed-door meeting exceedingly difficult.

Undaunted, Wortman argues in his reply brief that, because the Board filed a motion to dismiss his complaint, it necessarily admitted the truth of his claims, including those regarding *ex parte* communications among Board members. However, this Court has explained that "admissions of this nature, made solely in connection with the motion to dismiss, do not constitute admissions chargeable to the proponent of the motion for purposes of the litigation as a whole." *Blake Indus., Inc. v. Gen. Agents Ins. Co. of Am.*, No. M1999-01891-COA-R3-CV, 2000 WL 1031054, at *3 (Tenn. Ct. App. July 27, 2000), *no appl. perm. appeal filed* (citing *Anthony v. Tidwell*, 560 S.W.2d 908, 910 (Tenn. 1977)). Wortman's allegations of *ex parte* communications remain just that—unproven allegations. There being no evidence in the record to substantiate Wortman's allegations of *ex parte* communications, we find this issue without merit.

We next address whether the Trial Court erred in declining to find that Wortman was entitled to release upon completion of 30% of his sentence pursuant to an Alford plea agreement Wortman entered into with the State. Wortman insists he entered into an Alford plea agreement with the State whereby he was guaranteed release from incarceration upon completion of 30% of his sentence.[5] Indeed, in his brief, Wortman refers again and again to "the Alford Plea." Wortman asserts that the State has no right to break its contract with him or disregard the sentencing orders of a "sister court." However, there is at least one major problem with Wortman's argument—the record contains no such Alford plea agreement. We have only Wortman's word to go on that the State promised to release him upon completion of 30% of his sentence. That will not suffice.

---

[5] The Tennessee Supreme Court has described an Alford plea thusly:

> Although uncommon, criminal defendants also may plead guilty while maintaining that they did not commit the crime charged. Such pleas are often referred to as "Alford pleas" based on the United States Supreme Court case, *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford*, our nation's high court held that a defendant who professed his innocence could nonetheless enter a constitutionally valid guilty plea when the defendant "intelligently concludes that his interests require entry of a guilty plea." *Id*. at 37, 91 S.Ct. 160. Our Rules of Criminal Procedure refer to such pleas as "nolo contendere" pleas. Tenn. R. Crim. P. 11(a)(2); *see also State v. Crowe*, 168 S.W.3d 731,

The alleged "Alford Plea" Wortman references being of no avail, Wortman is left with his "release eligibility date." Wortman's release eligibility date determined when he became eligible for parole; it did not guarantee he would be released on parole on that date.[6] The Tennessee Court of Criminal Appeals has explained:

> [A] sentence does not expire merely because the release eligibility date has been reached. *Davis [v. State]*, 313 S.W.3d [751] at 758 [Tenn. 2010] ("[P]arole does not actually reduce the parolee's sentence."); *Lawrence Allen Hodge v. David Mills, Warden*, No. W2004-01107-CCA-R3-HC, 2004 WL 2866970, at *1 (Tenn. Crim. App. Dec. 13, 2004) ("Parole does not cause the sentence to expire or terminate, but is merely a conditional release from confinement.").

*Roberts v. Minter*, No. W2017-01944-CCA-R3-HC, 2018 WL 1603062, at *2 (Tenn. Crim. App. Mar. 29, 2018), *no appl. perm. appeal filed*. "A prisoner has no absolute right to be released on parole, even though he has a clean conduct record, and has served the minimum term for his offense." *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999) (citing *Graham v. State*, 202 Tenn. 423, 304 S.W.2d 622 (1957)). A prisoner is not entitled to immediate release upon reaching his or her minimum date for parole eligibility. *See Rice v. Lebo*, No. W2019-01753-CCA-R3-HC, 2020 WL 1623744, at *2 (Tenn. Crim. App. Apr. 2, 2020), *R. 11 appl. perm. appeal denied July 23, 2020*. Wortman's argument that he was *guaranteed* release on parole upon completing 30% of his sentence is unsupported by the facts or the law.

We next address whether the Trial Court erred in declining to find that the Board acted illegally, arbitrarily, or fraudulently. As relevant to this issue, Wortman argues first that District Attorneys Davidson and Hagerman should not have testified at his parole hearing and in fact were legally prohibited from doing so. Wortman points to Tenn. Code Ann. § 8-7-103, which sets out the duties of district attorneys general. Tenn. Code Ann. § 8-7-103 provides:

Each district attorney general:

---

743 (Tenn. 2005)….

*Frazier v. State*, 495 S.W.3d 246, 250 n.1 (Tenn. 2016).

[6] "The release eligibility date provided for in this section is the earliest date an inmate convicted of a felony is eligible for parole. The date is conditioned on the inmate's good behavior while in prison…." Tenn. Code Ann. § 40-35-501(n) (2019).

(1) Shall prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto, including prosecuting cases in a municipal court where the municipality provides sufficient personnel to the district attorney general for that purpose;
(2) Shall prosecute in the federal court all criminal cases removed from a state court in the district to any inferior court;
(3) May cooperate and assist, upon the request or direction of the attorney general and reporter, in the bringing, prosecution, defense, preparation, and trial of all cases in the circuit and chancery courts in which the attorney general and reporter is required to appear for the protection of the state or the public interest;
(4) Shall give an opinion, without charge, whenever called upon by any county officer in the district, upon a question of criminal law relating to the duties of the county officer's office;
(5) Shall submit to the office of executive director for the district attorneys general conference within ninety (90) days after the end of each fiscal year, a written report specifying:
(A) Each source from which funds were received by the office of the district attorney general during the fiscal year;
(B) The amount of funds received from each source; and
(C) The disposition of such funds;
(6) Shall have discretion in the performance of duties and responsibilities in the allocation of resources available to such district attorney general, any other law notwithstanding; and
(7) Shall have authority to delegate the foregoing duties and responsibilities to an assistant district attorney general.

Tenn. Code Ann. § 8-7-103 (2016).

Wortman notes that testifying before parole hearings is not listed among the duties of district attorneys general set out in the statute. Nevertheless, Tenn. Comp. R. & Regs. 1100-01-01-.07(1)(d) provides that district attorneys general may express their views as part of parole proceedings:

(1) Before granting or denying parole, the Board may apply the following factors to each eligible inmate to assist in determining whether such inmate will live and remain at liberty without violating the law or the conditions of his or her parole:

***

-18-

(d) The views of the appropriate trial Judge and the District Attorney General, who prosecuted the case;

Tenn. Comp. R. & Regs. 1100-01-01-.07(1)(d).

Wortman argues that, under the maxim "*expressio unius est exclusio alterius*," or, to express one thing implies the exclusion of the other, Tenn. Code Ann. § 8-7-103 forbids, by its silence, district attorneys general from testifying at parole hearings. Wortman also argues that Tenn. Comp. R. & Regs. 1100-01-01-.07(1)(d) must yield to Tenn. Code Ann. § 8-7-103. "When a regulation does not match a statute, the statute is controlling." *Ballard v. Tenn. Dep't of Health*, No. M2019-01101-COA-R3-CV, 2020 WL 2299773, at *8 n.10 (Tenn. Ct. App. May 8, 2020), *no appl. perm. appeal filed* (citing *Wright v. Tenn. Peace Officer Standards and Training Comm'n*, 277 S.W.3d 1, 15 (Tenn. Ct. App. 2008)).

However, we find no contradiction whatsoever between Tenn. Comp. R. & Regs. 1100-01-01-.07(1)(d) and Tenn. Code Ann. § 8-7-103. As this Court has explained: "The maxim, 'Expressio unius est exclusio alterius' is not inflexible, and should be applied to accomplish the legislative intention." *Pryor Oldsmobile/GMC Co., Inc. v. Tenn. Motor Vehicle Com'n*, 803 S.W.2d 227, 230 (Tenn. Ct. App. 1990) (citing *Bd. of Pk. Com'rs. v. City of Nashville*, 134 Tenn. 612, 185 S.W. 694 (1916)). Wortman has failed to explain how interpreting Tenn. Code Ann. § 8-7-103 to mean district attorneys general are barred from testifying at parole hearings would accomplish the statute's legislative intention, when nothing else in the statute or in the broader statutory scheme lends itself to that interpretation. On the contrary, Wortman's interpretation is strained and unreasonable. There was nothing improper or illegal about Davidson and Hagerman's testimony at Wortman's parole hearing.

Continuing with this issue, Wortman argues that the Board failed to adequately justify its decision in writing. Wortman asserts that the Board's stated reasons for denying him parole constituted mere "boilerplate." The Board found, pursuant to Tenn. Code Ann. § 40-35-503(b)(1) and (b)(2), respectively, that there was a substantial risk Wortman would not conform to the conditions of his release and that his release would depreciate the seriousness of the crimes for which he was convicted. Tenn. Comp. R. & Regs. 1100-01-01-.07(4) provides guidance:

(4) After applying the various factors for consideration to the individual inmate, the Board shall deny the inmate's release on parole if it determines that:
(a) There is a substantial indication that the inmate will not conform to the conditions of his or her parole; [or]

(b) Release from custody at this time would depreciate the seriousness of the crime of which the person stands convicted or promote disrespect for the law;
…

Tenn. Comp. R. & Regs. 1100-01-01-.07(4) (a) & (b).

In another case in which the adequacy of the Board's reasoning was challenged, *Hopkins v. Tennessee Bd. of Paroles and Probation*, this Court concluded:

> Mr. Hopkins argues that the Board erred by failing to provide him with an adequate statement of the evidence that the Board relied on in making its decision. This argument fails, like the others, because the Board gave two adequate, legally-supported justifications for denying Mr. Hopkins parole, namely the severity of his offense and the risk of adverse effects on institutional discipline. No more definite statement was required.

*Hopkins v. Tenn. Bd. of Paroles and Prob.*, 60 S.W.3d 79, 83 (Tenn. Ct. App. 2001) (emphasis added).

At his parole hearing, Wortman admitted guilt in the offenses to which he pled guilty. Wortman, by his own admission, put poison into his wife's toothpaste. This toothpaste was also used by his daughter. Wortman then tried multiple times to hire a hitman to have his wife killed. The severity of these offenses is evident. As in *Hopkins*, no more definite statement was required.

With respect to the other basis for the Board's decision, a substantial risk of nonconformance with the conditions of release, Wortman states he is actually a low risk as shown by his risk assessment score. However, while Wortman studiously avoids any substantive discussion in his appellate briefs about the crimes for which he pled guilty, we will not avoid the subject as it pertains directly to whether the Board had a sufficient evidentiary basis for its decision. To reiterate, Wortman acknowledged at his parole hearing that he tried to hire a hitman to kill his wife while he was incarcerated for trying to hire a hitman to kill his wife. We can well see how this information could rationally lead the Board to conclude that Wortman posed a substantial risk of nonconformance to conditions of release were he to be released given how determined he was to kill his wife including taking affirmative steps to do so even while incarcerated. In view of Wortman's own description of his brazen conduct, and all of the other evidence presented at the parole hearing, the Board had a sufficient basis for its conclusion that there was a substantial risk Wortman would not conform to conditions of release, notwithstanding his risk assessment score. We find that the Board's decision was based upon material evidence. We further find that the Board did not act illegally, arbitrarily, or fraudulently in reaching its decision.

-20-

The final issue we address is whether the Trial Court erred by declining to rule that the Board improperly converted a determinate sentence into an indeterminate sentence. However, while Wortman frames the matter this way, that is not what the Board did. The Board simply denied Wortman parole; it did not modify his sentence in any way. Wortman's sentence remains thirty years, the same as before. The Tennessee Court of Criminal Appeals has explained:

> The mere fact that the Board of Paroles may grant or deny parole does not convert a determinate sentence into an indeterminate sentence. Parole does not cause the sentence to expire or terminate but is merely a conditional release. *See Doyle v. Hampton*, 207 Tenn. 399, 340 S.W.2d 891 (1960). This issue has no merit.

*Baker v. State*, 951 S.W.2d 1, 2 (Tenn. Crim. App. 1997); *see also State v. Lacy*, No. W2019-00748-CCA-R3-CD, 2020 WL 1972610, at *2 (Tenn. Crim App. Apr. 24, 2020), *Rule 11 perm. app. denied Sept. 21, 2020* (favorably citing *Baker* for the proposition that "the Board of Paroles' ability to grant conditional release did not render the sentences indeterminate…."). We affirm the judgment of the Trial Court in all respects.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Fred Auston Wortman, III, and his surety, if any.

 

 

_____
D. MICHAEL SWINEY, CHIEF JUDGE